**HASTINGS BUILDING PRODUCTS, INC., Plaintiff,**

v.

**NATIONAL ALUMINUM CORPORATION, Defendant.**

No. 1:88:CV:619.

United States District Court, W.D. Michigan.

March 4, 1993.

Charles E. Barbieri, Foster, Swift, Collins & Smith, PC, Lansing, MI, Richard K. Wray, David A. Axelrod, Michael Hughes, Keck, Mahin & Cate, Chicago, IL, Carey S. Rosemarin, Jenner & Block, Chicago, IL, for Hastings Bldg. Products, Inc.

Jack B. Combs, Warner, Norcross & Judd, Grand Rapids, MI, David G. Ries, Thorp, Reed & Armstrong, Pittsburgh, PA, for National Aluminum Corp.

## OPINION

ENSLEN, District Judge.

This matter is before the Court pursuant to plaintiff's motion to award attorneys' fees. The case arose out of the contamination of soil and groundwater in the vicinity of the Hastings Building Products plant in Hastings, Michigan. Defendant owned the plant when the underground storage tanks in question were installed in 1978. Plaintiff acquired the plant, and the leaking tanks, in 1986.

The case went to trial on September 20, 1990. During trial, the Court granted a directed verdict in favor of defendant on plaintiff's three state law claims. After the trial concluded and post-trial briefs were filed, this Court held that the plaintiff prevailed on its remaining federal claim, arising under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") 42 U.S.C. § 9601 et seq., as amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"). Opinion and Order, May 13, 1991. On April 21, 1992, this Court amended its original judgment, and increased defendant's liability to plaintiff in contribution from 50% to 75% of the total past and future response costs regarding the soil and groundwater contamination at the Hastings plant.

Plaintiff now petitions this Court for a grant of reasonable and necessary attorneys' fees for litigation of its CERCLA claim. Attorneys' fees are not a recoverable cost of litigation unless Congress has explicitly authorized their recovery. Runyon v. McCrary, 427 U.S. 160, 185, 96 S.Ct. 2586, 2601, 49 L.Ed.2d 415 (1976). Therefore, the question plaintiff's request raises is whether private party litigation costs are fairly categorized as "enforcement activities," and, therefore, are recoverable as response costs under § 107 of CERCLA.

This question should be one of simple statutory construction. However, "CERCLA has acquired a well-deserved notoriety for vaguely drafted provisions and an indefinite, if not contradictory, legislative history." United States v. Mottolo, 605 F.Supp. 898, 902 (D.N.H.1985). Accord, Artesian Water Co. v. Government of New Castle County, 851 F.2d 643, 648 (3rd Cir.1988) ("Problems of interpretation have arisen from [CERCLA]'s use of inadequately defined terms, a difficulty particularly apparent in the response costs area.") The attorneys' fees provisions are illustrative of this complaint. Therefore, perhaps it should come as no surprise that courts across the country are split on this issue.

Plaintiff relies primarily on the only published appellate case to squarely address the issue, General Electric Co. v. Litton Industrial Automation Systems, Inc., 920 F.2d 1415 (8th Cir.1990), cert. denied, —— U.S. ——, 111 S.Ct. 1390, 113 L.Ed.2d 446 (1991). Defendant relies on a recent opinion from the Western District of Michigan, Abbott Laboratories v. Thermo Chem, Inc., 790 F.Supp. 135 (W.D.Mich.1991). While both sources of authority are persuasive, neither is controlling in this Court. I will summarize the analyses of each side of the debate, and then proceed to discuss my own views on the topic.

In the interest of clarity, before I proceed I will set out the relevant sections of CERCLA, for they will be discussed throughout this Opinion. They are as follows:

■ Attorneys' Fees and Private Suits

"Private" suits under CERCLA are those which are brought against responsible parties in order to gain reimbursement for response costs. § 107(a)(4)(B) of CERCLA states that any person who is responsible for a release of hazardous substances "shall be liable for any other necessary costs of response incurred by any other person". "Response" is defined as "remove, removal, remedy, and remedial action; all such terms ...

include enforcement activities related thereto." 42 U.S.C. § 9601(25).[1]

*Attorneys' Fees and Government Suits* § 9607(a)(4)(A) is parallel to the provision quoted above. It states that any person who is responsible for a release of hazardous substances "shall be liable for any other necessary costs of response incurred by the United States government or a State". In addition, § 9604(b)(1) states that whenever the President acts under CERCLA, she or he "may undertake such planning, legal, fiscal, economic, engineering, architectural, and other studies or investigations as he may deem necessary or appropriate to plan and direct response actions, to recover the costs thereof, and to enforce the provisions of this chapter."

*Attorneys' Fees and Citizens Suits* The CERCLA provision governing citizens suits, § 9659, was added in 1986. It provides that any person may commence a civil action on his or her own behalf against any person (including the government) who is alleged to be in violation of CERCLA, or against the government when it is alleged that it has failed to perform any act or duty under CERCLA which is not discretionary. 42 U.S.C. § 9659(a). This section grants the district court jurisdiction to enforce CERCLA, to order such action as may be necessary to correct the violation, and to impose any civil penalty provided for the violation. 42 U.S.C. § 9659(c). This section also explicitly provides that the court "may award costs of litigation (including reasonable attorney and expert witness fees) to the prevailing or the substantially prevailing party whenever the court determines such an award is appropriate." 42 U.S.C. § 9659(f).

*Private Party Litigation Fees Are Recoverable: General Electric*

■ The *General Electric* court addressed a case similar to the one at bar. Plaintiff bought a plant from defendant after contamination occurred, and later brought a successful law suit to compel defendant to contribute to cleanup costs. The district court ordered defendant to pay $419,000 in attorneys' fees,

a bill which was nearly half of the response cost assessed to defendant.

The Eighth Circuit approved the award of attorneys' fees, finding that it was explicitly authorized by the language of CERCLA:

Attorneys' fees and expenses necessarily are incurred in this kind of enforcement activity and it would strain the statutory language to the breaking point to read them out of the 'necessary costs' that section 9607(a)(4)(B) allows private parties to recover.... This conclusion based on the statutory language is consistent with two of the main purposes of CERCLA—prompt cleanup of hazardous waste sites and imposition of all cleanup costs on the responsible party. These purposes would be undermined if a non-polluter (such as GE) were forced to absorb the litigation costs of recovering its response costs from the polluter. The litigation costs could easily approach or even exceed the response costs, thereby serving as a disincentive to clean the site.

*General Electric,* 920 F.2d at 1422. *Accord, Gopher Oil Co. v. Union Oil Co.,* 955 F.2d 519, 527 (8th Cir.1992); *Shapiro v. Alexanderson,* 741 F.Supp. 472, 480 (S.D.N.Y.1990) (following *General Electric,* and holding that plaintiff's attorneys' fees may not be fully recoverable if plaintiff is partially responsible for damage to the site); *Pease and Curren Refining, Inc. v. Spectrolab, Inc.,* 744 F.Supp. 945, 951 (C.D.Cal.1990) (reasoning that to conclude that Congress did not intend "enforcement activities" to include private parties' attorneys' fees would render the phrase superfluous); *Key Tronic Corp. v. United States,* 766 F.Supp. 865, 871 (E.D.Wash.1991) (reasoning that Congress drafted Section 101(25) to establish the scope of response costs recoverable through CERCLA, so it applies to both the Government and private parties); *Bolin v. Cessna Co.,* 759 F.Supp. 692, 710 (D.Kan.1991).

*Private Party Litigation Fees Are Not Recoverable: Abbott*

The *Abbott* court disagreed with the *General Electric* court's conclusion that an attorneys' fees provision for private recovery action was added in the 1986 amendments.

---

1. The phrase after the semi-colon in this definition

tions can be found in the CERCLA statute. *Abbott* states that the statutory language of CERCLA clearly authorizes the recovery of the government's attorney's fees, 42 U.S.C. §§ 9607(a), 9601(23), 9604(b)(1), and attorneys' fees for citizens suits, 42 U.S.C. § 9659(f). It then concludes that, "[i]n light of the statutory reference to the government's right to recover attorney fees and the explicit award of attorney fees to the prevailing party in citizens suits, the silence of Congress with respect to recovery of attorney fees in private cost recovery actions is conspicuous." 790 F.Supp. at 142. *Accord, T & E Industries, Inc. v. Safety Light Corp.,* 680 F.Supp. 696, 707–08, 708 n. 13 (D.N.J. 1988) (holding that the general language of CERCLA allows a private entity to recover the same types of costs the government can with the exception of attorneys' fees, because attorneys' fees are specifically mentioned in the section governing government actions; also holding that private parties may recover response costs, but not enforcement costs); *Mesiti v. Microdot, Inc.,* 739 F.Supp. 57, 62 (D.N.H.1990) (following *T & E Industries*); *United States v. Hardage,* 750 F.Supp. 1460, 1511 (W.D.Okl.1990) (following *T & E Industries*); *Fallowfield Development Corp. v. Strunk,* 766 F.Supp. 335 (E.D.Pa.1991); *In re Hemingway Transport, Inc.,* 126 B.R. 656, 663 (D.Mass.1991); *Regan v. Cherry Corp.,* 706 F.Supp. 145, 148–50 (D.R.I.1989); *New York v. SCA Services, Inc.,* 754 F.Supp. 995, 1000 (S.D.N.Y.1991) (following *Regan*).

*Abbott* relies upon the rationale of *Regan v. Cherry Corp., supra,* to explain why "attorney's fees are not recoverable as response costs in recovery actions brought by *private* litigants." 790 F.Supp. at 142. *Regan* involved citizen plaintiffs who brought an action for recovery of response costs under § 9659, which governs citizens suits. The court dismissed this claim, holding § 9659 was designed solely to prod compliance with the statute, not to permit the recovery of response costs. The *Regan* plaintiffs argued that despite the fact that § 9607 provides for the recovery of response costs, § 9659 was intended to do so as well. The court disagreed with plaintiffs' contention that the only difference between the two sections is that the section governing citizens suits explicitly

provides for attorneys' fees. In response to plaintiffs' argument, the court opined that if the intention of Congress in the SARA amendment adding the citizens suit section was simply to allow for the recovery of attorneys' fees, then it would have amended the existing § 9607, and not added an entirely new section. *Regan,* 706 F.Supp. at 149.

*Discussion*

I agree with the *Regan* court that it is illogical to conclude that the intent of Congress in adding the section allowing citizens suits was simply to allow for recovery of attorneys' fees in response actions. I believe that Congress provided for citizens suits and suits to recover response costs in two separate sections because it recognized a critical distinction between the two types of plaintiffs. Private parties who own contaminated land have the opportunity, and hopefully the money, to clean it up. In contrast, concerned citizens have neither the resources, expertise, nor legal right to enter private property and clean up hazardous material. Instead, they can only try to prod those with the power to do so (either the responsible parties or the EPA) to clean it up.

This distinction leads my inquiry concerning Congressional intent to the issue of incentives. Under the statutory scheme of CERCLA, property owners who discover that their land has been contaminated by another party have two choices. They can either clean it up, and then seek to recover their expenses under § 9607, or they can leave the hazardous material where it lies and institute a § 9659 action to prod the responsible party to clean it up. Attorneys' fees are clearly recoverable in § 9659 citizens suits. If courts hold that individuals and corporations who undertake clean-up efforts at their own expense cannot recover attorneys' fees after a successful § 9607 suit to recover response costs from those responsible for the contamination, then there will be little incentive to initiate early clean-up. The cost effective strategy would be to file the citizens suit to force the hand of the responsible party. Yet the resulting delay in the removal of hazardous materials is not in the best interest of the public health or the welfare of the environment.

Without clear indication that this is the result Congress desired, I decline to read such a perverse incentive system into CERCLA. The Senate Report for the original CERCLA bill reveals that one of the objectives of the Act's scheme was "to create incentives for safer behavior for those parties who possess the greatest knowledge about the risks associated with their wastes and are in the best position to control disposal decisions." S.Rep. No. 848, 96th Cong., 2d Sess. 12–15, 31–34 (1980). As the *Bolin* court stated:

> By providing private parties with a federal cause of action for the recovery of necessary expenses in the cleanup of hazardous wastes, Congress intended § [9607] as a powerful incentive for these parties to expend their own funds initially without waiting for the responsible persons to take action. [citations omitted] The court can conceive of no surer method to defeat this purpose than to require private parties to shoulder the financial burden of the very litigation that is necessary to recover these costs.

*Bolin,* 759 F.Supp. at 710 (holding that plaintiffs could recover litigation costs which fall within the meaning of "necessary costs" authorized under § 9607(a)(4)(B)).

I therefore decline to adopt the position of the defendant. Faithfulness to Congressional intent requires that courts work to effectuate the intent behind entire regulatory schemes. When confronted by a section which has no "plain meaning" within a statutory framework such as CERCLA, courts should look to the legislation as a whole. Ambiguous phrases cannot be read in a vacuum, and in my opinion, CERCLA cannot be read correctly without consideration of the system of incentives it attempts to create.[2]

In addition, I believe that the intent of Congress in adding the 1986 SARA amendments was to allow private parties to recover attorneys' fees in response cost recovery ac-

tions. § 9607(a)(4)(B) of CERCLA states that any person who is responsible for a release of hazardous substances "shall be liable for any other necessary costs of response incurred by any other person". Before 1986, "response" was defined as "remove, removal, remedy, and remedial action." In 1986, Congress amended this definition to add the following phrase at its end: "all such terms ... include enforcement activities related thereto." § 9601(25) (emphasis added). If "enforcement activities" is not read to include attorneys' fees, this phrase becomes superfluous. I cannot conceive of any other enforcement costs private parties could incur which are related to removal, remedy and remedial action. Any negative implications which existed because the executive was explicitly reimbursed for a number of enforcement costs, including legal, in § 9604(b)(1), were extinguished by the SARA amendments' addition of "enforcement costs" to the definition of "response".

The *T & E Industries* court dismissed the argument that private parties are entitled to attorneys' fees after the addition of "enforcement costs" to the definition of "response." It reasoned that private parties do not incur "enforcement costs," because their suits are to recover their own expenditures, not to enforce CERCLA. *T & E Industries,* 680 F.Supp. 696, 708 n. 13. There are three reasons why I believe that this analysis is incorrect. First, § 9607 has a subsection which applies to the government and one which applies to private parties pursuing reimbursement for response costs. The definition of "response" in § 9601(25) applies to § 9607; Congress did not expressly limit the definition to federal parties. Therefore, the "plain language" of the text applies the phrase "enforcement costs" to private parties. Second, before the 1986 amendments, § 9604(b)(1) provided for the recovery of costs by the government. Therefore, the conclusion that the phrase "enforcement

---

**2.** *Kelley v. Thomas Solvent,* 727 F.Supp. 1532, 1544 (W.D.Mich.1989) also concerned § 9607 of CERCLA. In that case, my belief that CERCLA must be construed consistently with its goals led this Court to reject the strict liability construction some courts have placed on the CERCLA provision governing corporate liability. Instead,

I created the "prevention test", which focuses on whether a corporate individual could have prevented or significantly abated the release of hazardous substances. I chose this test because it provides an incentive to encourage the necessary individual, corporate and lender involvement in environmental management procedures.

costs" has no relevance to private parties assumes that Congress expended effort to alter § 9601(25) in 1986 with the intent of creating a redundant provision. This seems improbable. Finally, CERCLA does include provisions which require responsible parties to bear the financial burden of cleanup, regardless of who coordinates the effort. Therefore, it is arguable that a private suit for cost recovery is one for "enforcement" of a provision of CERCLA, just as a citizens suit is designed to compel compliance with the statute.

For the reasons discussed above, I conclude that the phrase "enforcement costs" encompasses attorneys' fees, and therefore the attorneys' fees incurred by a private party in a successful § 9607 suit are recoverable as response costs.

### National's Additional Defenses

Defendant asserts that plaintiff has waived its claim to attorneys' fees because its fee claim was not included in the pretrial order, and plaintiff did not raise its claim at trial or in post-trial filings. However, there would have been no basis for this motion at the time defendant claims plaintiff should have filed it, because plaintiff could not have known it was a prevailing party with regard to the CERCLA claim until this Court reached a decision. Plaintiff's motion for attorneys' fees was timely filed.

Finally, defendant argues that plaintiff has failed to demonstrate that its fees are reasonable and necessary. Plaintiff's original motion contends that the amount of $181,-514.77 represents the total reasonable and accurate attorneys' fees and other litigation expenses incurred in this matter by plaintiff through February 29, 1992. However, plaintiff submitted only conclusory affidavits to support its claim.

In contrast, in its reply, plaintiff states that it has asked the Court to only enter a judgment that defendant must pay its attorney fees. Plaintiff states that if it prevails on its motion, it will submit a detailed itemization in attempt to come to an agreement with defendant about the propriety of such fees. Only if the parties cannot agree will this Court be asked to fix a dollar amount.

I agree that plaintiff has not adequately justified any particular amount, and I therefore hold only that defendant is liable to plaintiff for attorneys' fees which are reasonable and necessary, and attributable to plaintiff's successful CERCLA claim. In addition, in my April 21, 1992 Opinion and Order, I held defendant liable for 75% of plaintiff's response costs. I now hold that attorneys' fees are included in the term, and therefore defendant shall be liable to plaintiff for 75% of plaintiff's attorneys' fees as well. If the parties cannot come to an agreement as to what amount fits this definition, they should file a motion with the Court asking it to identify the appropriate number.

### Intra–district Conflict

The interpretation of CERCLA in this case is difficult, as it often is, and there are well-reasoned arguments on each side of the question. However, I believe that when the ambiguous language of the relevant sections are construed in light of the goals of the entire statutory scheme, it becomes clear that the phrase "enforcement costs" was intended to include the attorneys' fees incurred by private parties in pursuit of a § 9607 cost recovery action.

I am sensitive to the fact that this decision creates uncertainty in the law of the Western District of Michigan. District judges within the same district do not invariably have to follow one another. *Farley v. Farley*, 481 F.2d 1009 (3rd Cir.1973). Although I believe that it is usually wise to preserve intra-district comity, this is not the case when a district judge is "clearly convinced ... that more good than harm would result from a departure from precedent." *Mueller v. Allen*, 514 F.Supp. 998, 1001 (D.Minn.1981).

After giving the opinion of my esteemed colleague "considerable weight", I have concluded that "more good than harm" will come from my disagreement with the *Abbott* decision. Although I am troubled by the intra-district conflict this conclusion will create, I am heartened by Judge Posner's discussion of the topic in *Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119 (7th Cir.1987). In that case, he advised that:

[D]istrict judges in this circuit must not treat decisions *by other district judges,* in this and *a fortiori* in other circuits, as controlling, unless of course the doctrine of res judicata or of collateral estoppel applies. Such decisions will normally be entitled to no more weight than their intrinsic persuasiveness merits. The reasons we gave for giving some though not controlling weight to decisions of other federal courts of appeals do not apply to decision of other district courts, because **the responsibility for maintaining the law's uniformity is a responsibility of appellate rather than trial judges** . . . .

*Id.* at 1124 (bold added). I look forward to the Sixth Circuit's resolution of this complicated, interesting and important issue of statutory construction.